Sidney Perssion and Caroline Perssion, Husband and Wife v. Commissioner.
Perssion v. Commissioner
Docket No. 69355.
United States Tax Court
T.C. Memo 1960-165; 1960 Tax Ct. Memo LEXIS 125; 19 T.C.M. (CCH) 882; T.C.M. (RIA) 60165; August 17, 1960
*125 Maurice Weinstein, Esq., 700 Madison Building, Milwaukee, Wis., for the petitioners. Delman H. Eure, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $3,631.09 in the petitioners' income tax for 1953. The issues presented for determination are the correctness of the respondent's action (1) in determining that the amount of rents reported by the petitioners should be increased by $4,800, (2) in determining that a long-term capital gain of $60 was realized on the sale of certain furniture and fixtures, and (3) in failing to determine that the period of limitations for the assessment of income tax against petitioners for 1953 has expired. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners are husband and wife residing in Milwaukee, Wisconsin. They filed a joint Federal income tax return for 1953, prepared on the cash basis, with the director in Milwaukee. Since 1924 Sidney Perssion, sometimes hereinafter referred to as petitioner, has been engaged in the business of owning and managing rental properties and on his income tax return *126 for 1953 reported rental income from 39 separate properties. On January 2, 1952, and at a cost of $33,348.50, the petitioner purchased from Eva Pytel the land and two buildings thereon located at 1032-1040 North 12th Street, Milwaukee, Wisconsin, and the furniture and fixtures in the buildings, together with the rooming and boarding house business which she then was conducting on the premises. A rooming and boarding house had been conducted on the premises for about 10 years prior to 1952. The furniture and fixtures acquired by petitioner consisted of beds, bedding, and other equipment ordinarily used in the operation of a rooming and boarding house. Although the properties could accommodate about 100 roomers and boarders, they were accommodating only 50 or 60 when purchased by petitioner. Upon acquiring the properties the petitioner apportioned the cost thereof, $33,348.50, among them and set them up on his books as follows: Furniture and fixtures
$ 2,000.00
Land
6,000.00
Buildings
25,348.50
Total
$33,348.50
For approximately the first 6 months following his purchase of the properties, the petitioner rented them to Eva Pytel at an undisclosed rental and *127 she continued to operate a rooming and boarding house on them. In June or July 1952, the petitioner induced George Lawrence and Josephine Lawrence, husband and wife, whom he had known for some time, to take over and operate the rooming and boarding house properties under an oral agreement that their operation was on a trial basis from month to month, at a monthly rental of $800, in order that they might decide whether they wished to undertake the operation of the properties for a period of years and that if they decided to do so, he then would enter into a written agreement with them respecting their further operation of them. The Lawrences began to operate the properties on a trial basis in July 1952 and continued to operate them on such basis until the end of that year, paying the petitioner the specified rental of $800 a month. When the Lawrences began operating the properties there were between 50 and 60 tenants. By the end of 1952 Josephine Lawrence was of the opinion that a monthly rental of $800 for the properties was excessive but she did not at that time disclose her opinion to petitioner. About the end of 1952 the petitioner discussed with the Lawrences a lease for the *128 properties for a term of years. For the granting of a 3-year lease the petitioner required that the Lawrences purchase from him at a purported price of $18,000, payable $500 a month, the furniture and fixtures which they had been using in their operation and in addition pay him a purported rental of $300 a month during the 3-year period for their use during that period of the real estate they theretofore had used in their operation. On or about January 2, 1953, the petitioner and the Lawrences entered into an oral arrangement, sometimes hereinafter referred to as the 1953 arrangement, whereby the Lawrences purchased from petitioner the furniture and fixtures at the purported price of $18,000, payable $500 a month, as required by him and leased the real estate from the petitioner for a period of 3 years beginning January 1, 1953, at a purported monthly rental of $300, with an option to renew the lease for an additional period of 3 years. On various occasions thereafter the Lawrences requested the petitioner to join them in reducing the 1953 arrangement to writing but the petitioner, for reasons satisfactory to himself, never did so. After the controversy involved herein arose between *129 the petitioner and the respondent, the petitioner on December 31, 1956, entered into a written lease with the Lawrences of the real estate theretofore used, together with an additional property, 1030 North 12th Street, for a period of 26 months beginning January 1, 1957, at a rental of $300 a month, with an option to renew for a period of 4 years at a rental of $400 a month. To the time of the trial herein the Lawrences continued to conduct the rooming and boarding house operation on the leased premises, with Josephine Lawrence preparing the meals, and the petitioner continued to own the real estate used in the operation. When in July 1952 the Lawrences began the rooming and boarding house operation, Eva Pytel moved into an apartment building on an adjacent property. On some undisclosed date in 1952 or 1953, the petitioner sold the apartment building to her and in the latter part of 1953 or in 1954 she began operating the building as a rooming and board house. As a result the Lawrences lost tenants to her. When the Lawrences began the rooming and boarding house operation in 1952, the "establishment" needed "quite a bit of fixing up," and while the furniture and fixtures generally *130 were in a fair condition, it was necessary for the Lawrences to discard a portion of them immediately. Since 1952 it has been necessary for the Lawrences to replace all of the furniture and fixtures which they have done over the years as and when needed. During the period the Lawrences have conducted their rooming and boarding house operation the number of roomers and boarders has varied from time to time. At the time of the trial the number had increased to a point where they rented additional property to house the boarders. At the time of the trial there were only a few regular tenants. The remainder were transients. To obtain tenants the Lawrences have employed card distributions and newspaper advertising. Pursuant to the 1953 arrangement the Lawrences during 1953 and through October of that year made 10 monthly payments to petitioner of $800 each or a total of $8,000. They them informed the petitioner that the income from their rooming and boarding house operation had declined to the extent that they were unable to continue making monthly payments of $800. The petitioner agreed to extend the time for completing payment of the purported sales price of $18,000 for the furniture *131 and fixtures. He reduced the monthly payments from $800 to $500, of which he allocated $300 to the payment of rent and $200 to payment on furniture and fixtures. Thereafter during 1953 the Lawrences made 2 monthly payments of $500 each or a total of $1,000. Of the total payments of $9,000 thus received by petitioner during 1953, he recorded $3,600 on his books as rent income received and recorded $5,400 on his books as payment received on an account designated "Mortgages Rec - Geo. Lawrence, 1032 - N. 12th Street" which petitioner had set up on his books with respect to the abovementioned $18,000. Aside from the designation of the account, the record does not indicate that either of the Lawrences, or both together, ever executed a mortgage to petitioner with respect to the furniture and fixtures they acquired from him or with respect to any other property. Throughout 1954 the petitioner pursuant to the 1953 arrangement as theretofore modified, received from the Lawrences monthly payments of $500 each or a total for the year of $6,000. Of that amount petitioner recorded $3,600 on his books as rent income received and $2,400 as payment on the mortgage receivable account. After having *132 made the foregoing payments for 1954 the Lawrences sought a further reduction in their monthly payments and the petitioner reduced such payments from $500 to $400. Of the latter amount he allocated $300 to rent and $100 to payment on furniture and fixtures. Pursuant to the 1953 arrangement as previously modified, the petitioner throughout 1955 received from the Lawrences monthly payments of $400 or a total for the year of $4,800. Of the latter amount the petitioner recorded $3,600 on his books as rent income received and $1,200 as payment on the mortgage receivable account. Of the monthly payments of undisclosed amounts received by the petitioner from the Lawrences during 1956, 1957, 1958, and through September 30, 1959, the petitioner recorded on his books as payments made on the mortgage receivable account the total amounts of $1,200, $2,400, $2,400, and $1,100 for the respective years. Through December 31, 1956, the petitioner had recorded on his books as payment on the mortgage receivable account a total of $10,200. Subtracting that amount from the purported sales price of $18,000 for the furniture and fixtures leaves a balance of $7,800. On December 31, 1956, and at the same *133 time the petitioner and the Lawrences executed the lease of that date, the Lawrences, with respect to the balance of $7,800, executed to the petitioner a note which reads as follows: $7,800.00 December 31, 1956 For value received, Thirty-nine (39) months after date I promise to pay to Sidney Perssion in installments of $200. per month starting Dec. 31, 1956, or order, at Milwaukee, Wisconsin Seven Thousand Eight Hundred and no/100 DOLLARS, with interest at the rate of no per cent. per annum payable after date until paid. Interest at 6% per annum after due date until paid. /s/ George Lawrence (Seal) / George Lawrence /s/ Josephine Lawrence (Seal) No. Due March 31, 1960 Promissee has option to cancel lease dated Dec. 31, 1956, for premises 1030-40 N. 12th St. if payments on this note are in default. At the close of September 30, 1959, the total of the amounts recorded by petitioner on his books as payments received on the mortgage receivable account was $16,100. Of the $9,000 received by petitioner from the Lawrences during 1953 pursuant to the 1953 arrangement, the petitioner in his income tax return for 1953 reported as income from rents the amount of $3,600, the *134 same amount he had recorded on his books as income from that source. The petitioner reported the remainder of the $9,000, or $5,400, which he had recorded on his books as payment on the mortgage receivable account, as having been received on the sales price of the furniture and fixtures and reported $2,399.76 of that amount, computed in the following manner, as representing the recognizable long-term capital gain realized thereon in 1953: Gain on Sale of Furniture and Fixtures
1030-40 N. 12th St.
Sold Jan. 2, 1953, for
$18,000.00
Purchased Jan. 2, 1952,
for
2,000.00
Net long-term capital gain on sale
$16,000.00
Percentage of gain on
sale
88.89%
Amount received in 1953
$ 5,400.00
Percentage of gain
88.89%
Gain realized in 1953
$ 4,799.52
Gain recognizable for 1953 (50%)
$ 2,399.76
In determining the deficiency the respondent determined that of the $18,000 reported by petitioner as the sales price of the furniture and fixtures, $16,000 was allocable to proceeds from the lease and $2,000 allocable to sales price of furniture and fixtures and that of the $5,400 received by the petitioner from the Lawrences in 1953 and allocated by him *135 to payment on furniture and fixtures, at least $4,800 represented rent received by him from them for the use of the real estate which they used in their rooming and boarding house operation. The respondent further determined that the remainder of the $5,400, or $600, represented proceeds received from the sale of furniture and fixtures, of which $60 represented long-term capital gain computed in the following manner: Gross sales price of furniture, fixtures,
and lease at 1030-40 N. 12th St., as
disclosed by return
$18,000
Less: Portion allocated to proceeds
from lease
16,000
Sales price of furniture and fixtures
$ 2,000
Cost of furniture and fixtures
$2,000
Less: Reserve for depreciation
400
1,600
Net profit on installment basis
$ 400
Gross profit ratio
20%
Gross proceeds of contract received in
1953
$ 5,400
Less: Amount of gross rent income
$ 4,800
Gross proceeds from the sale of furni-
ture and fixtures
$ 600
Long-term capital gain realized in 1953
$ 120
Amount of long-term capital gain rec-
ognizable for 1953 (50%)
$ 60
The petitioners filed their joint income tax return for 1953 on March 15, 1954. On or before *136 February 11, 1957, the petitioners executed a consent in writing to the extension to June 30, 1957, of the period of limitations for the assessment and collection of any deficiency in their income tax for 1953. The consent was executed by respondent on February 13, 1957, and the notice of deficiency involved herein was mailed by respondent to petitioners on May 28, 1957. Opinion Taking the position that the petitioner on January 2, 1953, sold the furniture and fixtures to the Lawrences at a price of $18,000, the petitioners contend that the $9,000 received by petitioner from the Lawrences during 1953 was properly reported in their income tax return as having been received as rent in the amount of $3,600 and as a payment in the amount of $5,400 on the sales price of the furniture and fixtures and that the respondent's determination should be reversed. The respondent, taking the position that only $2,000 of the above-mentioned $18,000 represented the sales price of the furniture and fixtures and that the remainder, $16,000, was properly allocable to the 3-year lease granted by petitioner to the Lawrences on or about January 2, 1953, contends that his determination was correct and *137 should be sustained. On January 2, 1952, the petitioner purchased from Eva Pytel at an unapportioned cost of $33,348.50 the properties which she theretofore had been using in the operation of a rooming and boarding house. Upon acquiring the properties, the petitioner, who had been engaged in owning and managing rental properties for approximately 28 years, made an apportionment of the cost to the various properties and entered them on his books in the following amounts: Furniture and fixtures
$ 2,000.00
Land
6,000.00
Buildings
25,348.50
Total
$33,348.50
In the absence of evidence to the contrary we conclude that the petitioner's purchase of the properties from Eva Pytel represented an arm's length transaction, that the cost of $33,348.50 correctly reflected the total fair market value of the properties at the time purchased, that the portions of the cost apportioned by petitioner to the various items of property correctly reflected the cost and the fair market value of such items at the time purchased, and specifically that the amount of $2,000 apportioned to furniture and fixtures correctly reflected the cost of such property to the petitioner and the fair *138 market value thereof at the time purchased. The petitioners point us to nothing in the record nor do we find anything therein which indicates an increase in the fair market value of the furniture and fixtures, or for that matter of the other properties, between January 1952 and January 1953. Throughout 1952 the furniture and fixtures continued to be used in a rooming and boarding house operation. On the basis of a cost of $2,000 and a useful life of 5 years, the respondent has determined that the depreciation allowed or allowable on the furniture and fixtures for 1952 was $400. In the absence of evidence to the contrary such determination must be regarded as correct. As a consequence the petitioners' basis at the end of 1952 for determining gain or loss on the sale of such property was $1,600. On the basis of the foregoing, the petitioner, at the end of 1952 and the beginning of 1953, owned furniture and fixtures which had cost him $2,000, the fair market value of which has not been shown to have been in excess of $2,000 and the basis of which to him was $1,600. To sustain the position of the petitioners that a year after acquisition petitioner sold the furniture and fixtures to *139 the Lawrences for $18,000, it would be necessary for us to find that the only detriment sustained by the petitioner was his parting with the ownership of the furniture and fixtures and that their acquisition of the ownership of such property was the only consideration received by the Lawrences. But the evidence shows that something else also was involved, namely, the granting by petitioner, and the acquisition by the Lawrences, of a 3-year lease on the real estate at a purported monthly rental of $300. The petitioner required that the furniture and fixtures be purchased at a price of $18,000 as a condition for the granting of the lease and that was the only reason apparent from the record for the Lawrences' agreeing to purchase the furniture and fixtures at such a price. In view of the direct relationship between the granting of the lease and the sale of the furniture and fixtures, the respondent, under the circumstances presented, was justified in concluding that part of the $18,000 represented consideration to the petitioner for the furniture and fixtures and part represented consideration for the lease. Immediately prior to the time the petitioner and the Lawrences entered into *140 the 1953 arrangement on or about January 2, 1953, the Lawrences had operated the properties for approximately 6 months on a trial basis. During that period the petitioner had required and had received from them a monthly rental of $800 for the furniture and fixtures and the real estate. In testifying at the trial, the petitioner in support of the monthly rental in 1952 of $800 and of a sales price of $18,000 for the furniture and fixtures in 1953 took the position that in 1952 the Lawrences had the benefit of a going business and the good will attached thereto and that in purchasing the furniture and fixtures in 1953 they purchased the going business with the accompanying good will. However, at no point in his testimony did the petitioner mention any amount as representing the value, either in 1952 or 1953, of the "going business" or of the "good will" purportedly appertaining thereto, or any amount as representing the combined values of the two. The record shows that on January 2, 1952, when the petitioner purchased the properties from Eva Pytel they were being operated at approximately one-half of capacity and that a like situation existed in July 1952 when the Lawrences took over *141 the operation. From July 1952 until through October 1953 the Lawrences made monthly payments of $800 to petitioner. Then, because of a decline in their business, the petitioner reduced the monthly payments to $500 beginning in November 1953. The payments continued at that rate through 1954 and beginning with January 1955 the petitioner made a further reduction, reducing them to $400 a month, and they continued at that rate at least throughout 1955. The record also shows that when, in 1953 or 1954, Eva Pytel, in an adjacent property which petitioner had sold her, began the operation of a rooming and boarding house, the Lawrences lost tenants to her. Although the petitioner stated that Eva Pytel was not supposed to reenter the rooming and boarding house business, the fact remains that she did and to the detriment of the Lawrences. Concededly the petitioner neither reduced the purported rent payable by the Lawrences nor the purported selling price of the furniture and fixtures because of the detriment. The record is silent as to the earnings realized at any time by Eva Pytel from her operation of the properties here involved. Likewise the record is silent as to the earnings realized *142 by the Lawrences at any time from their operation of the properties. From the evidence presented we are unable to find that the going business and any accompanying good will acquired by petitioner from Eva Pytel on January 2, 1952, had any substantial value either on that date or on January 2, 1953, when the Lawrences acquired from the petitioner the furniture and fixtures involved here. In the face of the fact that he required and received from the Lawrences a monthly rental of $800 in 1952 for the real estate and the furniture and fixtures used by them in their operation, petitioner expressed the opinion at the trial that a fair monthly rental for the real estate in 1952 and subsequent years was $300. If that be true, then in 1952 petitioner was requiring and receiving rent of $500 a month for the furniture and fixtures. To accept the petitioner's opinion as correct would require us to conclude that the Lawrences during their 6-months' operation in 1952 paid $3,000 to the petitioner as rent on furniture and fixtures which had cost him only $2,000 earlier in the year. This we are unable to do. From our consideration of the record we are of the opinion that the 1953 arrangement *143 was designed by petitioner as an attempt to disguise as long-term capital gain from the sale of furniture and fixtures what in reality was rent from real estate. Being of that opinion we sustain respondent's determination that the amount of rents reported by petitioner should be increased by $4,800 and that petitioner realized in 1953 a long-term capital gain of $60 from the sale of furniture and fixtures. Although in their petition the petitioners assigned error as to the failure of respondent to determine that the period of limitations for the assessment and collection of the deficiency involved herein has expired, they have offered no evidence and have made no contention with respect to the matter. Since the record shows that the petitioners filed their joint income tax return for 1953 on March 15, 1954, that in February 1957 they and respondent entered into an agreement in writing extending to June 30, 1957, the period of limitations for assessment of their income tax liability for 1953, and that the notice of deficiency involved herein was mailed by respondent to petitioners on May 28, 1957, we hold that the period of limitations for assessment of the deficiency here involved *144 has not expired. Decision will be entered for the respondent.